UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24444-CIV-COOKE/GOODMAN

DANIELLE SWEENEY,

    Plaintiff,

v.

CARNIVAL CORPORATION, et al.,

    Defendants.

_____/

**ORDER ON DISCOVERY DISPUTE CONCERNING PRIOR ATV DEATHS AND INJURIES ON CARNIVAL-RELATED EXCURSIONS DURING CRUISES**

Dennis Brown died because of injuries he sustained on November 1, 2018, while on an All-Terrain Vehicle ("ATV") excursion in St. Lucia during a cruise aboard the Carnival *Fascination.* The personal representative of his estate, Danielle Sweeney, filed this lawsuit against Carnival and two St. Lucia entities who allegedly operated the ATV excursion (Defendants Aanansi ATV Adventure and Cox & Company, Ltd.). Sweeney propounded written discovery to Carnival, which objected to Interrogatory Number 9, the subject of the discovery squabble at issue in this Order.

At bottom, the discovery dispute concerns Plaintiff's desire to obtain information about other incidents where Carnival passengers were killed or injured on other ATV excursion tours within Carnival's shore excursion portfolio during a three-year period

(i.e., November 1, 2015 through November 1, 2018). Carnival already responded to discovery concerning prior incidents during the specific St. Lucia excursion during the three-years preceding Brown's death; it said there were *no* prior incidents.

At the Undersigned's direction, Carnival and Sweeney each submitted a memorandum of law on the discovery dispute. [ECF Nos. 63; 64]. For the reasons outlined below, the Undersigned concludes that at this stage in the litigation (with no answer and a pending motion to dismiss the Amended Complaint), Plaintiff is entitled to Carnival's answer to this interrogatory.

This ruling relates only to discovery. It does not determine whether the information can be used by either side for summary judgment purposes. It does not conclude whether the information would be admissible at trial. It does not find that Carnival in fact breached a duty to warn about the inherent hazards of ATV excursions over rough terrain when the vehicles are driven by cruise ship passengers, some of whom may never have driven an ATV before, let alone over rough terrain.

It does not concern discovery about similar, yet different, excursions, such as those involving motorcycles, motor-scooters, Jeeps, Segways, scooters, UTVs (utility task vehicles, sometimes called a "side by side"), ORVs (off-road vehicles) quad bikes, small trucks, or RTVs (rough terrain vehicles). And it does not indicate whether the dangers

associated with ATVs[1] are open and obvious, thereby negating a duty to warn. Instead, it is a narrow ruling, concerning just one interrogatory, based on the detailed allegations in the Amended Complaint [ECF No. 13].

Because discovery is linked to the allegations and defenses, this Order will begin with a summary of the highlights of the relevant portions of the Amended Complaint. The Amended Complaint makes many allegations against the St. Lucia excursion operators. It also makes allegations against Carnival for the negligent selection, hiring, and retention of the two St. Lucia operators. The discovery dispute at issue does not involve those allegations. Instead, the dispute concerns a Sweeney-propounded interrogatory about Carnival-related ATV incidents at *other* similar excursions, around the world. Therefore, the duty to warn theory, which Plaintiff says is the justification for the interrogatory, arises from the alleged risks *inherent* in the use of ATVs over rough terrain, wherever that terrain happens to be located.

### I. Factual and Procedural Background

Thus, for the purposes of this ruling, which relates to one interrogatory and one negligence theory advocating a purported breach of a duty to warn of dangers associated with ATVs, the Amended Complaint alleges the following in the numbered paragraphs

---

[1] In her memorandum, Plaintiff defined ATV vehicles to be "four-wheeled vehicles that do not have a protective cage around the rider." [ECF No. 64, p. 3, n. 2]. Plaintiff's memorandum also highlights that the discovery at issue involves only ATV excursions over rough terrain (and would not, therefore, require discovery for other ATV excursions, such as those on paved, smooth roads).

quoted below:

> 115. This is a negligence action against CARNIVAL for failure to warn of the **dangers** which CARNIVAL knew or should have known about **regarding ATVs** and **ATV excursion tours** as well as the dangers associated with CARNIVAL's agent(s)' and partner(s)' operation of the ATV excursion tour on St. Lucia. CARNIVAL owes a reasonable duty of care under the circumstances to warn passengers of known dangers in places where its passengers, including Plaintiff, were invited to or may reasonably be expected to visit. CARNIVAL also owes a duty of reasonable care where it assumes and/or voluntary undertakes certain actions in relation to the Plaintiff and decedent. In this case, CARNIVAL voluntarily undertook to provide for and arrange a reasonably safe ATV shore excursion for passengers like Plaintiff and decedent on St. Lucia on November 1, 2018. By voluntarily undertaking these duties, CARNIVAL owed Plaintiff and decedent a duty of reasonable care to do so carefully and prudently under the circumstances.
>
> 116. CARNIVAL knew or should have known that **ATVs and/or ATV excursion tours are dangerous** for several reasons. First, CARNIVAL has for years prior to the subject incident in this case expressly prohibited tour operators throughout its portfolio of excursion partners from offering ATV excursions. Upon information and belief, **CARNIVAL prohibited these tours because CARNIVAL knew such vehicles, ATVs, and ATV tours, were dangerous due to the danger of the ATVs** to tip, fall, and/or lose control; the propensity of ATVs to crash and be difficult to handle, especially by inexperienced cruise passengers; and due to ATVs being operated **over rough, poorly maintained roads and trails in unfamiliar, often third world countries**. Thus, CARNIVAL knew or should have known that **ATVs and ATV tours were dangerous**; knew or should have known that **ATVs and ATV tours needed substantial and precise warnings and training of guests**; and knew or should have known that **ATVs and ATV tours created a foreseeable risk of injury** to cruise passengers. Second, CARNIVAL is aware of numerous lawsuits by cruise passengers filed prior to the subject incident in this case which name CARNIVAL as a Defendant and allege the **dangerous propensity of ATVs and ATV excursions.** These passenger lawsuits against CARNIVAL include *Taryn Serra-Cruz v. Carnival Corporation*, 18-23033 and *Richards v. Carnival Corporation*, 14-cv-23212.
>
> . . .

4

> 122. CARNIVAL was negligent and breached its duty of care by failing to properly and reasonably warn passengers like Plaintiff and decedent of the **dangers of ATVs**; by failing to reasonably warn passengers of the **high risk of injury involved in ATV excursion tours**; by failing to reasonably warn passengers, like Plaintiff and decedent that **ATV excursions were not like operating a regular car back home** in the United States and regular traversed dangerous, uneven, hard to manage, and in ill-repair terrain and road conditions; by failing to warn that **ATV excursions frequently traverse dangerous and uneven terrain which presents the serious risk of loss of control** of the ATV; by failing to warn that **ATV shore excursion operators throughout CARNIVAL's portfolio, including COX & COMPANY/AANANSI, are often staffed by unprofessional, poorly trained individuals** and do not offer training and safety instructions which are necessary for safely carrying out such an excursion; by failing to warn that ATV shore excursions operators, including COX/AANANSI, often do not regularly or adequately maintain their ATVs and use out of date equipment; by failing to warn that the subject ATV excursion tour and **ATV excursion tours may not be properly and adequately guided at all times;** by failing to warn about and correct the dangerous inadequate training and safety instructions provided by COX & COMPANY/AANANSI; by failing to warn that road conditions in St. Lucia where Plaintiff and decedent were to take their excursion were extremely poor and dangerous; by failing to warn that the dangerous road conditions in St. Lucia along the route used by COX & COMPANY/AANANSI featured sections with steep drop-offs which were unprotected by guard rails and had drivers operating on the wrong side of the road; by failing to warn Plaintiff and decedent that the St. Lucia ATV tour used and relied upon difficult to maneuver, old, out of date, and poorly maintained ATVs and equipment; by failing to train act with due care and reasonableness in the undertakings which CARNIVAL assumed to Plaintiff/decedent like inspecting and correcting the dangerous deficiencies described above; by failing to warn and/or correct that COX & COMPANY/AANANSI did not meet minimum safety and quality standards and/or exercise due care; and by otherwise failing to warn about the known dangers of ATVs, ATV excursions, and the ATV excursion provided by COX & COMPANY/AANANSI on St. Lucia.

[ECF No. 13, pp. 57-58, 60-61 (emphasis added)].

Plaintiff's Interrogatory Number 9 asks for the following information:

Provide the following information on all incidents of Carnival Cruise passengers who suffered/reported injury when participating in ATV (All-Terrain Vehicle) excursion tours within Carnival's entire shore excursion portfolio from 11/01/2015 to 11/01/2018:

a. Date of incident;
b. Description of the incident;
c. Full name, address, and telephone number of the person(s) involved in the accident and his/her attorney, if any;
d. Description of how the incident happened, and what caused the incident;
e. Description of where the incident occurred;
f. Description of the injuries, if any, caused by the incident; and
g. If a lawsuit was filed, the full style and case number of the suit

[ECF No. 63, p. 2].

Carnival objected to this interrogatory, contending that it is overbroad. Despite this objection, Carnival provided information about the specific St. Lucia ATV excursion. It did not, however, provide information about *other* ATV excursions offered through Carnival for other cruise passengers in other locations during the same three-year period.

In order to prevail on a duty to warn type of negligence claim, Sweeney must establish that Carnival had notice (knew or should have known) of a dangerous condition. Both sides accept this fundamental premise.

According to Carnival, however, only information about the one specific ATV excursion on St. Lucia would establish the requisite notice. Therefore, Carnival says, information about other ATV excursions in other locations would not establish the

6

necessary notice, even if Carnival passengers were taken there during their cruises. In other words, Carnival appears to take the position that risks **inherent** in ATVs (in general) are too broad to meet the notice requirement because the only relevant dangers are those involving the specific excursion operator at one precise location.

Plaintiff, of course, adopts a broader view of notice. She says that her allegations go beyond the dangers or conditions at the specific St. Lucia ATV tour operator and encompass "dangerous conditions associated with ATV-excursions." [ECF No. 64, p. 3]. She argues that notice need not be tied to one specific spot or location to give rise to a duty to warn in a maritime negligence case. Instead, Sweeney argues, notice of a relevant danger "can arise out of different physical locations so long as the risk-creating conditions are similar." *Id.* at p. 6. Therefore, she posits, discovery about the dangers inherent in ATVs would be permissible because the risks would be similar regardless of where the tour happened to be located.

Therefore, Sweeney's argument can be summarized as follows: To be sure, there may be *additional* risks associated with a specific excursion operator at one location, such as a cash-strapped operator who regularly fails to properly train its staff and who skimps on required maintenance. But the mere fact that some ATV excursions may be more dangerous than others does not eliminate one of her fundamental allegations: that *all* ATV excursions offered by Carnival are inherently risky and that Carnival knew of this or should have known this and should have provided warnings of these risks.

7

## II. Applicable Legal Standards and Analysis

Maritime law governs the liability of a cruise ship for a passenger's slip and fall. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). "In analyzing a maritime tort case, we rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). To prevail on a negligence claim, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Id.*

"Under maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels*, 796 F.3d at 1279 (quotation marks omitted). That standard requires "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Id.*; *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (same). And, as both parties acknowledge, an operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious. *See, e.g., Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 954 (9th Cir. 2011).

A carrier's duty of reasonable care includes a "duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1046 (11th Cir. 2019) (emphasis added) (internal citation omitted). To state a negligence claim, the plaintiff

8

must allege the defendant breached its duty by "creating a dangerous condition of which it was actually or constructively aware, . . . and of which it had failed to warn [plaintiff] under reasonable foreseeability . . ." *Torres v. Carnival Corp.*, 635 F. App'x 595, 601 (11th Cir. 2015) (internal citations omitted). *See generally Twyman v. Carnival Corporation*, 410 F. Supp. 3d 1311 (S.D. Fla. 2019) (denying motion to dismiss negligence claims brought by the parents of a deceased cruise ship passenger arising from rental of a jet ski at Grand Turk).

As succinctly outlined in *Guevara v. NCL (Bahamas) Ltd.*, a maritime plaintiff can establish constructive notice with evidence that the "defective condition existed for a sufficient period of time to invite corrective measures." 920 F.3d 710, 720 (11th Cir. 2019) (citing *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)) (reversing summary judgment for cruise ship on duty to warn claim). Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which "conditions substantially similar to the occurrence in question must have caused the prior accident." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988).

Our appellate court has established that duty to warn types of negligence cases against cruise ship operators may proceed even when the death or injury occurred at a port of call and even when the consequences did not occur on an excursion sponsored by or offered by the cruise ship operator. *See Chaparro*, 693 F.3d at 1337 (reversing the district court and finding failure to warn adequately pleaded where the plaintiff alleged the

9

defendant-cruise line knew or should have known of specific danger of gang violence at a specific beach location).

For purposes of determining whether the notice or constructive notice which a Plaintiff must establish is "similar enough" to allow a complaint to go forward and to permit discovery, discovery of prior incidents does not require the same foundation as would be necessary to support admission into evidence. *See Kulakowski v. Royal Caribbean Cruises, Ltd.*, No. 16-Civ-21375, 2016 WL 10951816, at *4 (S.D. Fla. Nov. 2, 2016). The notice at issue 'must either be tied to the particular operator, the particular vessel, the particular waters, or at least the particular conditions." *Id.* at *5.

In *Kulakowski*, the Court permitted plaintiff to obtain discovery about prior incidents on other ships "because there does not appear to be anything specific to the [specific ship] that affects the theory of Defendant's breach." *Id.* Because there is nothing about the specific St. Lucia ATV excursion which would negate or undermine the theory that Carnival should have warned about the dangers inherent in taking an ATV excursion anywhere in the world as part of a cruise, Sweeney's purpose is permissible. *See generally K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1046 (11th Cir. 2019) (reversing order dismissing complaint and emphasizing that a cruise ship has a "duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit").

As the *K.T.* Court noted, a court must at this procedural point accept the allegations as true. Therefore, I am accepting as true Sweeney's allegations that ATV excursions sponsored by Carnival in myriad locations throughout the world are inherently dangerous. Given this procedural reality, the duty to warn allegation drives the permissible discovery. *See Doria v. Royal Caribbean Cruises, Ltd.*, 393 F. Supp. 3d 1141, 1146 (S.D. Fla. 2019) (denying cruise ship operator's motion to dismiss duty to warn claim against a cruise ship operator for injuries sustained during an ATV excursion because the amended complaint alleged facts sufficient to show that cruise ship operator "had actual or constructive notice of the dangerous conditions of the ATV excursion");[2] *see also Serra-Cruz v. Carnival*, 400 F. Supp. 3d 1364, 1371 (S.D. Fla. 2019) (denying cruise ship operator's motion to dismiss duty to warn claim raised by passenger injured in an ATV excursion in the Dominican Republic and explaining that Plaintiff provided sufficient factual detail about alleged prior ATV incidents occurring ***with Carnival*** and/or the specific excursion operator).

Carnival cites some legal authority to support its blinkered view of permissible discovery, but the Undersigned, similar to the *Twyman* Court, does not find them

---

[2]   The *Doria* Court pointed out that the Plaintiff there had alleged that the cruise ship operator "had a duty to warn passengers against the inherent dangers of the ATV excursion." *Id.* It also noted that Doria alleged the duty to warn was triggered by, among other factors, "other cruise ship passengers being injured on ATV excursions." *Id*. In other words, the Court there found it significant that there were allegations about injuries on *other* ATV excursions, not merely the specific one at issue in the lawsuit.

11

persuasive. *Twyman* involved a passenger who died during a jet ski excursion. *Twyman*, 410 F. Supp. 3d at 1316. The cruise ship operator there is the same one named as a Defendant here (i.e., Carnival Corporation). Carnival argued that the *Twyman* Plaintiffs failed to allege that Carnival was on notice of the dangerous condition and further said that the risks associated with jet ski riding are open and obvious and therefore do not generate a duty to warn. *Id.* at 1317.

Similar to arguments raised here, Carnival relied on *Joseph v. Carnival Corp.*, No. 11-20221-Civ, 2011 WL 3022555 (S.D. Fla. July 22, 2011), in *Twyman*, but the Court was not persuaded, finding it distinguishable. *Id.* at 1321.

As convincingly explained in *Twyman*, the plaintiff in *Joseph* failed to state a claim for negligence because there were no allegations the defendant-cruise line had knowledge of the dangerous condition that led to the defendant's death and no assertions to identify the specific parasailing vendor involved. *See Joseph*, 2011 WL 3022555, at *3-4. By way of example, the *Twyman* Court noted, Joseph failed to allege the defendant "'knew or had reason to know of any incidents associated with the latent dangers of parasailing involving the specific vendor engaged by' the decedent – in fact, plaintiff 'did not even identify the specific parasail vendor in her Second Amended Complaint or allege that Carnival knew such vendor existed;' nor did the plaintiff 'allege that the decedent's accident was caused by any particular' danger which may make parasailing hazardous." *Twyman*, 410 F. Supp. 3d at 1321-22 (citing *Joseph*, 2011 WL 3022555, at *3).

Contrary to Carnival's insistence in *Twyman*, "*Joseph* is not factually identical to Plaintiffs [sic] claim." *Twyman*, 410 F. Supp. 3d at 1321. The plaintiffs in *Twyman* "alleged Carnival's knowledge of a specific dangerous condition — a vendor providing jet ski rentals without adequate operational instructions; the vendor involved — Wet Money Enterprise; and the location of the dangerous condition – Carnival's Cruise Center." *Id.* These factual allegations supported Twyman's claim that Carnival either knew or should have known about the danger posed by Wet Money Enterprise's failure to provide adequate instructions while operating at the Cruise Center. *Id.* The same can be said about the specificity of Sweeney's allegations here.

In addition, Carnival's reliance on *Joseph* is further undermined by the fact that the plaintiff there, unlike the Plaintiff here, did not allege that the accident was caused by any particular danger "which may make parasailing hazardous." *Twyman*, 410 F. Supp. 3d at 1321-22 (citing *Joseph*, 2011 WL 3022555, at *3). In other words, there were no allegations of risks inherent in the activity in *Joseph*.

Moreover, *Twyman* also branded Carnival's reliance on another case it cited both there and here as "equally unpersuasive." *Id*. at 1321. Specifically, Carnival relied on *Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215 (S.D. Fla. 2011), where, as *Twyman* noted, the Plaintiff had failed to allege that the defendant cruise ship operator had notice of dangerous conditions specific to the excursion or the location where the injury occurred. *Twyman*, 410 F. Supp. 3d at 1321. The Plaintiffs there had booked Segway

13

excursions on a private nature preserve on Nassau but were robbed at gunpoint while touring the preserve. *Koens*, 774 F. Supp. 2d at 1218.

*Twyman* also rejected another argument which Carnival made here as well: that it had no duty to warn passengers of the risks associated with the activities (i.e., jet ski and ATV excursions) because the danger is open and obvious. But "[t]he question of whether a danger is open and obvious is properly addressed after a factual record has been developed." *Twyman*, 410 F. Supp. 3d at 1322.[3]

The Undersigned is also not persuaded by another Carnival-submitted authority: *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786 (11th Cir. 2017). In *Wolf*, the appellate court affirmed an order granting a defendant's summary judgment motion and holding that the ship owner had no duty to exercise reasonable care to warn passengers of the dangers existing in zip-line excursions. *Id.* at 795. But a close reading of *Wolf* demonstrates that it turned on inadequate pleading -- the plaintiff failed to make the allegations necessary to show that Celebrity was on notice of a dangerous condition. *Id.* Thus, the appellate court twice highlighted the fact that its ruling was based "on this record." *Id.* at 794. In contrast, Sweeney has asserted allegations about the risks inherent in ATV tours taken by cruise ship passengers, regardless of whether the excursion was in St. Lucia, the Dominican Republic, Alaska, Jamaica or any other port of call.

---

[3] "This is especially the case considering a court's conclusion a danger is open and obvious is not a complete bar to recovery." *Twyman*, 410 F. Supp. 3d at 1322.

14

The Undersigned appreciates Carnival's argument that the excursion operators are independent contractors and that there is no principal-agent relationship. Nevertheless, Sweeney has alleged a joint venture between Carnival and the excursion operators; that they are partners; that Carnival controls the overall sales, marketing, and advertising strategy of the excursion operators; that they share a proprietary interest; and that there is actual agency, apparent agency, and agency by estoppel. *Twyman* mentioned several of these factors as significant when determining that the Complaint was sufficient to allege that Carnival knew or should have known of any dangerous condition associated with jet skiing -- and concluding that the lawsuit survived a motion to dismiss.

But Carnival is also being sued directly here, and that claim is separate from those based on agency, apparent agency, agency by estoppel, joint venture, partnership and joint control.

### III. Conclusion

Given Sweeney's allegations that Carnival knew or should have known of the risks inherent in ATV excursions provided to Carnival cruise ship passengers anywhere in the world, Plaintiff is entitled to an answer to Interrogatory 9. Carnival shall answer the Interrogatory by August 31, 2020. By requiring this interrogatory answer, the Undersigned is not "improperly transforming cruise ship operators into insurers of their passengers' safety." *Guevara*, 920 F.3d at 722 (rejecting similar argument and noting that

cruise ship operator may prevail at trial by successfully arguing that it did not breach the duty to warn).

In order to make clear the limited nature of this ruling, the Undersigned flags several points which I am *not* deciding in this Order: (1) whether Sweeney has in fact stated a claim for a failure to warn type of negligence (as that issue arises in a motion to dismiss which has not been referred to me); (2) whether Carnival was even under a duty to warn in the first place (because, for example, there were no prior incidents involving ATV-related injuries or deaths); (3) whether Sweeney can base a duty to warn theory on the dangers *inherent* in ATV excursions provided to cruise passengers (as opposed to dangers associated with the one excursion operator on St. Lucia); (4) whether the dangerous condition of ATV excursions are open and obvious; (5) whether Carnival can meet its duty to warn (assuming it exists) by arranging for the excursion operators to provide necessary warnings; (6) whether the excursion operators in St. Lucia provided adequate warnings; (7) whether Carnival provided its own warning, and, if so, whether it was adequate; (8) whether prior incidents throughout the world at ATV excursions operated for Carnival passengers by excursion owners are sufficient to provide actual or constructive notice; (9) whether deaths or injuries sustained by passengers during cruises offered by cruise ship companies *other* than Carnival (or its affiliates) are sufficient to generate knowledge or constructive knowledge by Carnival if the excursion is also one used by Carnival for its passengers; and (10) whether prior incidents of death or injury

on ATV excursions offered by Carnival throughout the world during the three-year period used here are similar enough to be used for summary judgment purposes or to introduce at trial.

So this ruling concerns only discovery. Depending on the response, there may or may not be evidence of prior incidents which might be sufficiently similar to be substantively significant in this wrongful death lawsuit.

Carnival's interrogatory answer must, of course, be under oath. In addition to providing the factual information about prior incidents in the three-year period, Carnival's interrogatory answer should include a detailed explanation about what steps it took to track down the information.

If Carnival is unable to obtain complete information from the ATV excursion operators it used during the three-year period, then it shall explain this in the interrogatory answer and list the specific ATV excursion operators who failed to adequately cooperate.[4] Although Carnival previously advised of no prior ATV incidents during the three-year period, the under oath interrogatory answer should also include

---

[4] Carnival attached its "Standard Shore Excursion Independent Contractor Agreement" as an exhibit to its motion to dismiss. [ECF No. 19-1]. Dated May 1, 2003, the agreement provides, in numbered paragraph 13 (Right to Inspect) that Carnival "shall be entitled to inspect, audit and copy Operator's books and records at any time in order to verify Operator's compliance with this Agreement." *Id.*

The initial Agreement provided that ATV excursions "are completely prohibited." A March 2014 Addendum, however, added the "Aanansi ATV Adventure" to the agreement as a permissible excursion.

information about the St. Lucia ATV excursion operators involved in the instant lawsuit. To the extent that is repetitive, so be it.

The Undersigned is surprised (and somewhat bewildered) that Carnival says that there were *no* other prior ATV incidents at the St. Lucia ATV location during the three-year period. This reaction does not mean that the Undersigned views Carnival's representation to be inaccurate. But it does mean that I think it prudent for Carnival to double-check the accuracy of its earlier "no-prior-incidents" response. *See Wolf*, 683 F. App'x at 794-95 (expressing "surprise" that cruise line operator received no incident reports in a ten-year period for zip-line excursions -- which it described as "participants of all ages, sizes, and fitness and experience levels whizzing through the air on high speed traverses" -- but holding that "skepticism, however, is not a substitute for evidence").

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 13, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record